**United States District Court**

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| YUE ZHOU, et al., ) | Case No.: C 05-0279 PVT |
| ) | |
| Plaintiffs, ) | **ORDER GRANTING SUMMARY JUDGMENT** |
| ) | **IN FAVOR OF PLAINTIFF KUO** |
| v. ) | |
| ) | |
| WANG'S RESTAURANT, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

On November 17, 2006 this court issued an order to Defendant to show cause why summary judgment should not be entered in favor of Plaintiff Kuo in the amount of $1,051.50 ("OSC re Plaintiff Kuo"). Defendant responded to the OSC. The court held a hearing on this matter on January 9, 2007. At the hearing, Plaintiff Kuo's current counsel appeared and also made a special appearance on behalf of *Defendant*.[1] Plaintiff's counsel informed the court that defense counsel had a scheduling conflict as he was in trial in another case, but that Defendant was willing to submit on the papers. The court notes that, if Defense counsel notified the court of his scheduling conflict in advance, the court would have rescheduled the hearing rather than foregoing oral argument (particularly in light of the fact Defendant's memorandum of points and authorities contained *no*

---

[1] The court continues to have concerns about the conflict of interest implied by Plaintiff's counsel, Mr. Miller, being represented by defense counsel, Mr. Hartman, in an unrelated matter. Mr. Miller has, however, represented to the court that Plaintiff Kuo has consented to this arrangement.

ORDER, *page 1*

legal argument whatsoever). Based on the briefs and declarations submitted, and the file herein,

IT IS HEREBY ORDERED that, for the reasons discussed herein, Summary Judgment is GRANTED in favor of Plaintiff Kuo in the amount of $1,051.50.

### I.   PROCEDURAL BACKGROUND

On January 19, 2005, Plaintiffs Yue Zhou and Shiao-Lin Kuo filed a complaint against Defendant Wang's Restaurant in which they asserted, among other things, claims for unpaid overtime under the Fair Labor Standards Act ("FLSA"). Plaintiff Zhou settled his claims against Defendant.[2]

On September 8, 2005, Plaintiffs each served on Defendant a set of interrogatories and a set of requests for production of documents.

A mediation was held on September 20, 2005. The case did not settle.

Defendant failed to timely respond to the discovery propounded by Plaintiffs, and failed to respond to numerous attempts by Plaintiffs' counsel to meet and confer. On November 10, 2005 Plaintiffs filed a motion to compel, which ultimately was granted. The court also issued sanctions against Defendant because Defendant failed to show substantial justification for its failure to respond to the discovery requests. (*See*, Order Granting Plaintiffs' Motion To Compel; and Order Sanctioning Defendant for Failing to Respond to Discovery, filed herein on November 22, 2005.)

On December 5, 2005, Plaintiffs filed a motion for an extension of time to complete discovery based on Defendant's belated disclosure of 5 witnesses and, among other things, Defendant's failure to produce documents referenced in its interrogatory responses, and failure to provide a substantive response to an interrogatory asking what facts supported Defendant's 29 affirmative defenses. Defendant did not respond to Plaintiffs' request to extend time, and on December 16, 2005, the court granted Plaintiffs' request.

On February 13, 2006, Plaintiffs took the deposition of Ching Shi Wang ("Mrs. Wang"), one of the owners of Defendant restaurant. During the deposition, Plaintiffs' attorney questioned

---

[2] Plaintiff Zhou's settlement with Defendant is the subject of a separate motion to approve the fairness of the settlement, and is not addressed in this order.

Mrs. Wang about Defendant's basis for calculating overtime and about certain documentation. (*See* Wang Decl.,[3] Exh. 11 at 30:19 through 32:25; *and* Second Wang Decl.,[4] Exh. 3.) In response to various questions about the documentation of hours and pay, Mrs. Wang disclaimed any knowledge and said the documents were prepared by her accountant. When asked about discrepancies between the pay amounts stated for the same pay period in two documents regarding Plaintiff Zhou that Defendant had produced in discovery, Mrs. Wang could not explain the discrepancies. (*See* Exh. 3 to the Second Wang Decl., 53:13 through 54:14.) Mrs. Wang was unable to provide the spelling of the accountant's name, but defense counsel agreed to provide the name to Plaintiff's counsel within a few days. (*See* Exh. 3 to the Second Wang Decl., 51:3 through 53:12.)

Three days later, on February 17, 2006, Plaintiff Kuo filed a document entitled "Notice of Dismissal of Action Discharge of Attorney" in which he discharged his attorney, Adam Wang, and he purported to dismiss his action against Defendant.

Four days after that, on February 21, 2006, another of Defendant's employees, Taishin Nieh, filed a document also entitled "Notice of Dismissal of Action; Discharge of Attorney," dismissing his separate action for unpaid overtime against Defendant. (*See* Notice of Dismissal of Action; Discharge of Attorney, filed on February 21, 2006, in *Nieh v. Wangs Restaurant*, Northern District of California Case No. 05-4118 PVT, of which this court hereby takes judicial notice.)

Shortly thereafter, on March 9, 2005 Plaintiff Zhou filed a substitution of counsel, substituting attorney Kurt Miller in place of attorney Adam Wang. On June 28, 2006, Defendant filed a purported "Stipulation for Dismissal" signed by both Plaintiff Zhou's new counsel and defense counsel.[5]

---

[3]   As used herein, "Wang Decl." refers to the Declaration of Adam Wang in Opposition to Defendant's Motion for Determination of Fairness of Settlement, filed herein on September 27, 2006

[4]   As used herein, "Second Wang Decl." refers to the Declaration of Adam Wang in Support of Motion to Compel and for Further Discovery for October 10th Hearing, filed herein on October 3, 2006.

[5]   As was later brought to this court's attention, between the time Miller substituted in as counsel for Plaintiff Zhou and the time he signed the purported Stipulation for Dismissal, defense counsel Eric Hartman substituted in to represent *Miller* personally in a case brought against Miller by one of Miller's other clients. (*See* docket for *Martin Manufacturing, Inc. v. Kurt A. Miller*, Santa Clara County Superior Court, case no. 1-05-CV-052223, available at http://www.sccaseinfo.org, of which this court hereby takes judicial notice.)

On July 16, 2006, Plaintiffs' former attorney, Adam Wang, filed a document entitled Motion to Permit Former Counsel to Continue Litigating and to Order Disclosure re Settlements. On August 24, 2006, this court issued an order denying the motion by Plaintiffs' former counsel, but deeming the purported dismissals to be motions for a court determination of the fairness of the settlements of Plaintiffs' FLSA claims.

The court held an evidentiary hearing on the fairness issue on October 10 & 27 2006. On October 11, 2006, this court issued an Interim Order re Plaintiff Kuo's "Notice of Dismissal" in which the court found that, based on testimony taken at the October 10th hearing, Plaintiff Kuo had *not* entered into any settlement with Defendant. Thus, as to Plaintiff Kuo, there was no settlement for which the court could determine fairness. The court also noted that, under Rule 41(a)(1) of the Federal Rules of Civil Procedure, a plaintiff may not unilaterally dismiss a case where the defendant had already filed an answer, and thus Plaintiff Kuo's purported "Notice of Dismissal" was of no effect.

After soliciting input from the parties regarding how to proceed with respect to Plaintiff Kuo's claims, and in light of Supreme Court precedent holding that valid FLSA claims are non-waivable, on November 17, 2006 the court issued the OSC re Plaintiff Kuo. The court expressly notified Defendant that this was Defendant's opportunity to come forward with all evidence it believes is relevant to defeating Plaintiff Kuo's claims. *See Celotex v. Catrett,* 477 U.S. 317, 326 (1986) (noting that courts may enter summary judgment *sua sponte* so long as the losing party was on notice that it had to come forward with all of its evidence).

On December 6, 2006, Defendant filed the Declaration of Attorney Eric F. Hartman in Opposition to Order to Show Cause Why Summary Judgment Should Not Be Entered in Favor of Plaintiff Kuo. Defendant did not submit any evidence in support of the opposition, and instead requested that the court allow Defendant to offer live testimony at an evidentiary hearing. On December 7, 2007, the court issued an interim order denying the request for an evidentiary hearing, and extending to January 2, 2007 the deadline for Defendant to present evidence in response to the OSC re Plaintiff Kuo. The court reminded Defendant that this was Defendant's opportunity to come forward with all evidence it believes is relevant to defeating Plaintiff Kuo's claims.

On January 3, 2007,[6] Defendant filed a response to the OSC re Plaintiff Kuo, along with a new Declaration of Attorney Eric F. Hartman in Opposition to Order to Show Cause Why Summary Judgment Should Not Be Entered in Favor of Plaintiff Kuo (the "Hartman Declaration" or "Hartman Decl."). Attached to the Hartman Declaration are four unauthenticated exhibits, including a demonstrative exhibit (Exh. 4 to the Hartman Decl.) setting forth Defendant's purported calculation of Plaintiff Kuo's pay. Regarding these exhibits, Hartman expressly states in his declaration: "I do not attest tho [sic] the accuracy of the documents but only that Defendant Wang's Restaurant sent them to me in opposition to the subject OSC."

On January 8, 2007, one day before the hearing, Defendant filed an unauthorized Supplemental Declaration of Attorney Eric F. Hartman in Opposition to Order to Show Cause Why Summary Judgment Should Not Be Entered in Favor of Plaintiff Kuo ("Supplemental Hartman Declaration" or "Supp. Hartman Decl."). Attached to the Supplemental Hartman Declaration are two unauthenticated demonstrative exhibits setting forth Defendant's purported calculation of Plaintiff Kuo's hours and pay. Hartman again states that he is not attesting to the accuracy of the documents. These two new demonstrative exhibits regarding the calculation of Plaintiff Kuo's pay are inconsistent with Defendant's previously filed demonstrative exhibit, and all three demonstrative exhibits are inconsistent with the actual documentation submitted by Defendant.[7] Because of the inconsistencies and errors in the three demonstrative exhibits, and because they do not constitute

---

[6] On December 28, 2006, President Bush declared January 2, 2007 to be a day of national mourning due to the death of former United States President Gerald R. Ford. Consequently, the court was closed on January 2, 2007 and Defendant's deadline for responding to the OSC was automatically extended to January 3, 2007.

[7] For example, the calculation in Exhibit 4 to the Hartman Declaration indicates Plaintiff Kuo's semi-monthly pay was $831.93, whereas the first page of Exhibit 3 to the Hartman Declaration indicates that Plaintiff Kuo's semi-monthly pay was $835.76. (*See also*, Exh. 3 to the Wang Decl.)
Also, Exhibit 5 to the Supplemental Hartman Declaration indicates Plaintiff Kuo was paid $90 for July 15, 16, & 17, 2004. No pay is mentioned for July 14, 2004, even though both Exhibits 5 and 6 to the Supplemental Hartman Declaration indicate Plaintiff worked that day. Assuming this was merely a typographical error, and that the $90 was for hours worked on July 14, 15, & 16, 2004, and accepting the hours indicated for those days in Exhibit 6, Plaintiff Kuo was paid $90 for 12.5 hours of work, which correlates to an hourly wage of $7.20 (or more if taxes were properly withheld). An after-tax hourly wage of $7.20 would also be consistent with the second page of Exhibit 3 to the Hartman Declaration, which purports to show a cash payment of $90 for 12.5 hours of work. Yet Exhibit 5 uses an hourly rate of only $6.75 for calculating how much Plaintiff Kuo earned. Moreover, at least one of those days are in the second half of July, so is covered in the full pay period for the second half of July. Thus, Exhibit 5 double counts at least one day of pay.

ORDER, *page 5*

evidence in any event (*see* FED.R.CIV.PRO. 56(e)), the court disregards them.

Plaintiff Kuo has filed no briefs or evidence either in support of or opposition to this court's OSC re Plaintiff Kuo.

## II.    FACTUAL BACKGROUND

Plaintiff Kuo was employed by Defendant as a waiter from Monday, July 12, 2004 through Sunday, September 19, 2004 (*see* Amended Answer (admitting ¶ 7 of the Complaint) and Hartman Decl., Exh. 1; *see also* Wang Decl. ¶ 2 and Exh. 1). While employed by Defendant, Plaintiff Kuo had one day off each week, which always fell on either Wednesday or Thursday (*see* Hartman Decl., Exh. 1; *see also* Wang Decl., ¶ 2 and Exh. 1). Four days a week Plaintiff Kuo worked at least 9 hours, and two days a week he worked at least 9.5 hours.[8] Plaintiff Kuo was not exempt from the overtime requirements of the FLSA.[9]

Based on the calendar for 2004, of which the court hereby takes judicial notice, Plaintiff Kuo worked 150 hours of overtime. Specifically, as demonstrated in Appendix A to this order, Kuo worked the following number of regular and overtime hours for the following pay periods:

| | |
|---|---|
| First half of July, 2004: | 27 regular |
| Second half of July, 2004: | 93 regular and 36 overtime (129 total) |
| First half of August, 2004: | 80 regular and 39 overtime (119 total) |
| Second half of August, 2004: | 98 regular and 30 overtime (128 total) |
| First half of September, 2004: | 80 regular and 30 overtime (110 total) |
| Second half of September, 2004: | 22 regular and 15 overtime (37 total) |

Regardless of the number of hours actually worked by Plaintiff Kuo, Defendant paid him $835.76 each full half-monthly pay period; part by check, part by cash, and part by tax withholdings (*see* Hartman Decl., first page of Exh. 3; *see also* Wang Decl., ¶ 4 and Exh. 3).

---

[8]   See section III.B. below.

[9]   The burden of showing an exemption to the FLSA's overtime requirements is on the employer. *Gieg v. DDR, Inc.*, 407 F.3d 1038, 1045 (9th Cir. 2005). There is no evidence in the record that would support a finding that Plaintiff Kuo was exempt, and Defendant does not argue in its opposition that he was. On the contrary, Defendant submitted a pay calculation that implicitly concedes that Plaintiff Kuo was not exempt and was entitled to time and a half for all overtime hours.

ORDER, *page 6*

### III. LEGAL STANDARDS

#### A. SUMMARY JUDGMENT

To preclude summary judgment, the party opposing summary judgment must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). It is then the court's responsibility to determine whether the 'specific facts' set forth by the party opposing summary judgment, coupled with undisputed background or contextual facts, "are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587.

A court is not required to consider evidence that is technically part of the record, but is not specifically referred to in a party's motion papers, even if the evidence is arguably sufficient to create material issue of fact precluding summary judgment. *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029-31 (9th Cir. 2001).

After notice to the parties, a district court may grant summary judgment *sua sponte* "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *See, Celotex,* 477 U.S. at 323, 326.

#### B. STANDARDS UNDER THE FAIR LABOR STANDARDS ACT

An employee may not waive his rights under the FLSA without the approval of either the U.S. Department of Labor or the court. *See, e.g., Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981).

Where an employer has failed to maintain accurate payroll records, an employee carries his burden under the FLSA if he shows he performed work for which he was improperly compensated and produces some evidence to show the amount and extent of that work "as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded*

*by statute on other grounds*. Once a prima facie case has been established, the burden shifts to the employer to come forward with evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the evidence that is before the court. *See Mt. Clemens Pottery*, 328 U.S. at 687-88. Where the employer fails to produce such evidence, the district court "may then award damages to the employee, even though the result be only approximate." *Mt. Clemens Pottery*, 328 U.S. at 688.

### IV. DISCUSSION

Based on the undisputed facts in the record, Plaintiff Kuo has a valid claim for overtime pay under the FLSA because he was a non-exempt employee who routinely worked overtime and, as discussed herein, he was not properly compensated for the overtime hours.

#### A. PLAINTIFF KUO WORKED 150 HOURS OF OVERTIME WHILE EMPLOYED BY DEFENDANT

Based on the testimony of Mrs. Wang at the October 27, 2006 hearing, and the declarations of three of Defendant's other employees (*see,* Wang Decl., Exhs. 5, 6 & 7), it is undisputed that the employees were expected to be at the restaurant 10 hours on Fridays and Saturdays, and 9.5 hours on the other four days, for a total of 55 hours per week after deducting a half hour per day for meal breaks.

At the hearing Mrs. Wang testified essentially that she did not keep track of the specific hours worked by employees--just which days they worked--because the hours were always the same. She confirmed that on Sundays, Mondays, Tuesdays, Wednesdays and Thursdays the employees' work hours were 10:30 a.m. to 3:00 p.m. and 4:30 p.m. to 9:30 p.m. (a total of 9.5 hours), and on Fridays and Saturdays the employees' work hours were 10:30 a.m. to 3:00 p.m. and 4:30 p.m. to 10:00 p.m. (a total of 10 hours). The employee declarations state that they had one meal break each day at 4:30 p.m. (*see,* Wang Decl., Exhs. 5, 6 & 7). The restaurant reopened for business at 5:00 p.m. (*see,* Wang Decl., Exh. 4), at which time the employees were presumably on duty. Thus, as "matter of just and reasonable inference," Plaintiff Kuo worked 9.5 hours on Fridays and Saturdays, and 9 hours on all other work days.

As discussed in Section I, above, the court is disregarding the demonstrative exhibits submitted by Defendant. However, even if the court were inclined to consider those exhibits, the court would still disregard those portions of the exhibits that are unsupported by competent declarations. *See* FED.R.CIV.PRO. 56(e). Defendant's demonstrative calculations of Plaintiff Kuo's hours subtracts a full hour for meal breaks each day, uses 11:00 a.m. for the start time on Sundays, and omits 5 days that Defendant's actual documentation indicates Plaintiff Kuo worked. Defendant has not directed the court's attention to any evidence that would support any of those departures from the evidence that is already in the record, nor any evidence that would negate the reasonableness of the inferences to be drawn from the other employees' declarations along with the hours the restaurant was open. *See, Mt. Clemens Pottery*, 328 U.S. at 687-88. Thus, even if considered, the demonstrative exhibits submitted by Defendant are insufficient to raise a genuine issue of material fact with regard to the hours Plaintiff Kuo worked. Based on Defendant's own "Work Schedule" documentation (Hartman Decl., Exh. 1) and Mrs. Wang's own testimony regarding the usual hours the employees all worked, along with the declarations of the other employees and the hours listed on the front of Defendant's own menu, the undisputed evidence establishes that Plaintiff Kuo worked 55 hours each week from July 12, 2004 through September 19, 2004.

**B.   DEFENDANT FAILED TO PROPERLY COMPENSATE PLAINTIFF KUO FOR HIS OVERTIME HOURS**

It was Defendant's obligation as an employer to comply with the FLSA's overtime requirements. *See, e.g., Lindow v. United States*, 738 F.2d 1057, 1060-61 (9th Cir. 1984) (noting that an employer must pay proper overtime compensation when it "suffers" or "permits" an employee to work in excess of 40 hours). Instead, Defendant consistently paid Plaintiff Kuo a fixed salary of $835.76 for pay periods made up of *differing* numbers of work hours. Not only are there different numbers of days in different half-month pay periods, but also, because overtime is only due for the hours worked *after* the employee has worked 40 hours in a given week, the number of

overtime hours varies significantly for different half-month pay periods.  (*See* Appendix A[10] to this order.)  Flat-rate semi-monthly payments are inherently irreconcilable with the requirements of the FLSA.[11]  Defendant cites no authority to support a finding of compliance with the FLSA where a non-exempt employee is paid the same dollar amount for every half-month pay period, regardless of the number of overtime hours worked.  Such an approach is impermissible because it would essentially conflate the overtime requirements into the minimum wage requirements, because an employer could disregard overtime requirements altogether so long as a reverse-engineered hourly wage never dipped below minimum wage.  *See, e.g., Beck v. Prupis*, 529 U.S. 494, 506 (2000) (noting that statutes "should not be construed so as to render any provision of that statute meaningless or superfluous").

### C.   DEFENDANT OWES PLAINTIFF KUO $525.75 IN UNPAID OVERTIME

Based on the undisputed facts, and the provisions of 29 C.F.R. section 778.113(b),[12] the court finds that Kuo's hourly rate was $7.01.[13]  Kuo was already paid straight time for the 150 hours of overtime he worked, but he is still owed the additional half-time pay for those hours.  Thus, for the

---

[10]   Appendix A is a calendar showing the days and hours that Plaintiff Kuo worked for Defendant, as discussed in this order.  The two pay periods in each month are separated by a bolded line.

[11]   Even under the "fluctuating work week" rules, which is inapplicable here, the amount of twice-monthly pay would differ because only *per week* base pay is allowed to be consistent, and the employer must still pay for each hour of overtime in an amount equal to ½ of the worker's usual hourly pay.  *See* 29 C.F.R. § 778.114(a); *see also, e.g., Hunter v. Sprint Corporation*, 453 F.Supp.2d 44, 58-59 (D.D.C. 2006).

[12]   Section 778.113 provides, in relevant part:

"(a) Weekly salary. If the employee is employed solely on a weekly salary basis, his regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate. * * * .

(b) Salary for periods other than workweek. Where the salary covers a period longer than a workweek, such as a month, it must be reduced to its workweek equivalent. A monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks). A semimonthly salary is translated into its equivalent weekly wage by multiplying by 24 and dividing by 52. Once the weekly wage is arrived at, the regular hourly rate of pay will be calculated as indicated above. * * * ."

[13]   $835.76 x 24 = $20,058.24/yr ÷ 52 weeks = $385.74/wk ÷ 55 hours = $7.01 /hr.

150 hours of overtime worked by Kuo, Defendant still owes Plaintiff Kuo $525.75.[14]

### D. DEFENDANT OWES PLAINTIFF KUO $525.75 IN LIQUIDATED DAMAGES

In addition to the unpaid overtime, Kuo is entitled to an award of statutory liquidated damages in an equal amount. *See* 29 U.S.C. § 216(b). Under the FLSA, liquidated damages are mandatory unless the employer establishes both subjective and objective good faith in its violation. *See* 29 U.S.C. § 260; *see also Local 246 Utility Workers Union of America v. Southern California Edison*, 83 F.3d 292 (9th Cir. 1996). The employer must establish that it had "an honest intention to ascertain and follow the dictates of the Act and that it had reasonable grounds for believing that [its] conduct complie[d] with the Act." *Id.* at 298 (internal quotation omitted). Even if the employer meets its burden, the court may still award some liquidated damages. *Id.*

Mrs. Wang testified that she knew non-exempt employees must be paid overtime. Defendant failed to submit any evidence in opposition to the OSC that would support a finding that Defendant acted in subjective good faith. And from the evidence and testimony in the record, it is clear that Defendant did not.

At her deposition, when questioned about calculating overtime for Plaintiff Zhou (whom Defendant conceded was entitled to overtime at least during his initial 3 month "training" period), Mrs. Wang was shockingly cavalier about the distinctions between salaries and hourly wages, and between bi-weekly pay periods and semi-monthly pay periods. She testified as follows:

```
    Q.      Do you know is the CPA doing the employment records, on what
basis?  Was it biweekly or fifteen days currently?
    MR. HARTMAN:    If you know.
    THE WITNESS:    Either fifteen days or two weeks, I don't know.
    BY MR. WANG:
    Q.      So is it correct, now, your testimony is that this understanding with
your CPA has never been reached up to this date?
    A.      Very recently since this case I have conversations with my CPA.  Up
to this point we have not come up with a decision whether two weeks or fifteen days.
    Q.      So you previously testified you were [sic] instructed the CPA to write
down the specifying [sic] that you require them to write on each column of this
document, Exhibit 2, correct?
    A.      Yes, for every two weeks, yes.
    Q.      So you wanted them to write every two weeks, correct?
    A.      Twice a month, so that would be every fifteen days.
    Q.      It's different.  So you wanted them to write on what basis, semi-
monthly basis, or biweekly basis or every fifteen days?
```

---

[14] $7.01 ÷ 2 = $3.505 x 150 = $525.75.

> A. Well, let's see, he was asking for twenty-four hundred, so I just make it divided by two. As I state earlier, every hour he make eight dollar something. After the first forty hours he would make one and a half as overtime.
> Q. So every time you call your CPA, you wanted them to write hourly rate as eight some dollars, correct?
> A. No he's on straight pay. No, I was not offering him hourly rate. As I told you, based on the twenty-four hundred dollars a month, I figure the rate, the hourly rate would have been eight dollars something. And after the first forty hours, he would make time and a half of the eight dollars something. That's why I was willing to go with these number.
> Q. Okay. Now let me ask you the other way. When it comes the time that you need to pay Mr. Zhou, what did you do in figuring out how much Mr. Zhou would be paid for that period.
> A. You mean how did he get the money?
> Q. No. What I'm saying is for every period, what did Mrs. Wang needed to do to calculate to figure out how much Mr. Zhou will need to be paid?
> A. So he was making twenty-seven hundred. So after two weeks I would just give him one-half of this.
> MR. HARTMAN: One half his salary, correct?
> THE WITNESS: Yes.

The court notes, based on the court's observations of Mrs. Wang at the hearings, that Mrs. Wang is an intelligent woman. Her inconsistent testimony regarding the calculation of wages and overtime does not appear to be a matter confusion on her part. Rather it appears to be a misguided attempt to somehow reverse engineer hourly rates and overtime pay from what were clearly flat-rate salaries.

As evidenced by Mrs. Wang's deposition testimony, even a year after having been sued for unpaid overtime, with regard to its employees' pay periods Defendant still had "not come up with a decision whether two weeks or fifteen days." Based on all the evidence before the court, it is clear that prior to this lawsuit Defendant had made no attempt to determine how overtime must be calculated under the FLSA.

Based on Defendant's failure to show subjective good faith, and because there is no objectively reasonable basis for believing that the flat-rate bi-monthly salary paid to Plaintiff Kuo met the overtime pay requirements of the FLSA, an award of liquidated damages is mandated.

### E.   Plaintiff Kuo's Attempted Dismissal Did Not Waive His FLSA Claims for Overtime Pay and Liquidated Damages

As discussed above, an employee may not waive his rights under the FLSA without the

approval of either the U.S. Department of Labor or the court.[15] *See, Barrentine*, 450 U.S. at 740.

The Court in *Barrentine* explained that :

> "This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine*, 450 U.S. at 740.

Because of the strong public policies underlying the nonwaivable nature of FLSA protections, employees are covered even when they knowingly and voluntarily seek to decline the protections of the FLSA. In *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 302 (1985), the Supreme Court explained that:

> "If an exception to the Act were carved out for employees willing to testify that they performed work 'voluntarily,' employers might be able to use superior bargaining power to coerce employees to make such assertions, or to waive their protections under the Act. Such exceptions to coverage would affect many more people than those workers directly at issue in this case and would be likely to exert a general downward pressure on wages in competing businesses." *Tony and Susan Alamo Foundation*, 471 U.S. at 302 (citations omitted).

The present case presents an example of the kind of employer abuse of superior bargaining power the Supreme Court decried in the *Tony and Susan Alamo Foundation* case. In response to this action, Defendant filed a general denial purporting to deny all allegations of the complaint. With regard to Plaintiff Kuo's claims the denials were both factually and legally unsupported. Defense counsel then proceeded to make this action as burdensome as possible on Plaintiffs. Defense counsel failed to serve adequate initial disclosures and failed entirely to respond to legitimate

---

[15] One district court has opined that there is a "trend" away from finding FLSA claims non-waivable. *See Martinez v. Bohls Bearing Equipment Co.*, 361 F.Supp.2d 608 (W.D.Tex. 2005). However, in that case the court, rather than relying on FLSA cases, relied on cases decided under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. Moreover, it ignored the clear expression of congressional intent implicit in congress' decision to amend the ADEA to allow for the release of ADEA claims when certain strict requirements are met, without any change to the non-waivability of FLSA claims. *See* Older Workers Benefit Protection Act, 29 U.S.C. § 626(f). The legislative history makes it clear that congress was well aware that courts at that time considered FLSA claims to be non-wavable. *See* House Report No. 101-664, P.l. 101-433, Older Workers Benefit Protection Act, H.R. Rep. No. 664, 101st Cong., 2nd Sess. 1990, 1990 WL 200383 (1990) ("House Report No. 101-664"). In light of this awareness, and congress' action on the ADEA, congress' failure to make any amendments that would change the non-waivability of FLSA claims (such as by removing the date restriction from 29 U.S.C. § 253) evinces a congressional intent that FLSA claims continue to be non-waivable.

discovery requests. Defense counsel ignored attempts to meet and confer by Plaintiffs' counsel, and ignored a motion to compel filed by Plaintiffs (resulting in an order compelling the discovery and an order sanctioning Defendant). And, when Plaintiffs' counsel got too close to establishing Defendant's wrong-doing, it appears that Plaintiff Kuo was pressured to drop his claims.

At the October 10, 2006 hearing, Plaintiff Kuo disclaimed any such pressure. However, he appeared fearful and his testimony was confused in many respects. And the records in this case and Mr. Nieh's related case suggest that pressure was exerted, either directly or indirectly. Information in the record suggests that both Mr. Kuo's parents and Mr. Nieh's parents are friends of the owners of Defendant restaurant, and that there was probably familial pressure to dismiss their claims, if not directed by Defendant. The sequence and timing of events[16] suggests that their parents' decision to pressure them to drop their claims is somehow related to attorney Wang's efforts to depose Defendant's accountant to get to the bottom of the discrepancies in Defendant's payroll records and Mrs. Wang's failure to provide a coherent explanation of Defendant's overtime calculations. None of this is relevant to the court's decision regarding the amount of overtime Defendant still owes Plaintiff Kuo in this case. However, the strong possibility that such pressure caused Plaintiff Kuo to try to drop his claims illustrates the kind of employer misuse of superior power which led Congress and the Supreme Court to mandate that FLSA claims cannot be voluntarily waived by employees. It is thus relevant to the court's finding that Plaintiff Kuo did not waive his FLSA claims.

### V.   CONCLUSION

Defendant has failed to bring forth evidence from which a reasonable jury could return a verdict for Defendant. *See Anderson*, 477 U.S. at 248. Defendant's practice of paying non-exempt employees a flat-rate salary for semi-monthly pay periods, which purportedly included overtime pay,

---

[16] Just three days after attorney Wang made it clear that he would depose Defendant's accountant, Plaintiff Kuo attempted to unilaterally drop his claims against Defendant. And just four days later Mr. Nieh dismissed his separate action for unpaid overtime against Defendant. (Because Defendant had not filed an answer in that case, Nieh's unilateral dismissal was valid, although likely without any *res judicata* effect in light the restrictions on waiving FLSA claims.) The fact that these filings were coordinated by someone is suggested by the similarity of the two documents, each of which has the unusual title "Notice of Dismissal of Action; Discharge of Attorney." Shortly thereafter, the remaining Plaintiff in this case fired attorney Wang, and from the record before the court it appears Defendant's accountant was never deposed.

violates the FLSA. Plaintiff Kuo worked 150 hours of overtime while employed by Defendant. Using the method for calculating hourly wages set forth in 29 C.F.R. section 778.113, Kuo's hourly rate comes out to be $7.01 per hour. Thus, the amount of unpaid overtime still due and owing to Plaintiff Kuo is $525.75. The award of liquidated damages in an equal amount brings the total for both unpaid overtime and liquidated damages to $1,051.50. The court will enter judgment in favor of Plaintiff Kuo accordingly.

Dated: *1/16/07*

PATRICIA V. TRUMBULL
United States Magistrate Judge

# APPENDIX A

## July 2004

| Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday |
|---|---|---|---|---|---|---|
|  |  |  | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12<br>9 reg. | 13<br>9 reg. | 14 | 15<br>9 reg. | 16<br>9.5 reg. | 17<br>3.5 reg.<br>6 o.t. | 18<br>9 o.t. |
| 19<br>9 reg. | 20<br>9 reg. | 21 | 22<br>9 reg. | 23<br>9.5 reg. | 24<br>3.5 reg.<br>6 o.t. | 25<br>9 o.t. |
| 26<br>9 reg. | 27<br>9 reg. | 28<br>9 reg. | 29 | 30<br>9.5 reg. | 31<br>3.5 reg.<br>6 o.t. |  |

The designation "reg." refers to regular hours, the designation "o.t." refers to overtime hours.

| Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday |
|---|---|---|---|---|---|---|
| **August 2004** | | | | | | 1<br>9 o.t. |
| 2<br>9 reg. | 3<br>9 reg. | 4<br>9 reg. | 5 | 6<br>9.5 reg. | 7<br>3.5 reg.<br>6 o.t. | 8<br>9 o.t. |
| 9<br>9 reg. | 10<br>9 reg. | 11<br>9 reg. | 12 | 13<br>9.5 reg. | 14<br>3.5 reg.<br>6 o.t. | 15<br>9 o.t. |
| 16<br>9 reg. | 17<br>9 reg. | 18<br>9 reg. | 19 | 20<br>9.5 reg. | 21<br>3.5 reg.<br>6 o.t. | 22<br>9 o.t. |
| 23<br>9 reg. | 24<br>9 reg. | 25<br>9 reg. | 26 | 27<br>9.5 reg. | 28<br>3.5 reg.<br>6 o.t. | 29<br>9 o.t. |
| 30<br>9 reg. | 31<br>9 reg. | | | | | |

The designation "reg." refers to regular hours, the designation "o.t." refers to overtime hours.

# September 2004

| Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday |
|---|---|---|---|---|---|---|
|  |  | 1<br>9 reg. | 2 | 3<br>9.5 reg. | 4<br>3.5 reg.<br>6 o.t. | 5<br>9 o.t. |
| 6<br>9 reg. | 7<br>9 reg. | 8 | 9<br>9 reg. | 10<br>9.5 reg. | 11<br>3.5 reg.<br>6 o.t. | 12<br>9 o.t. |
| 13<br>9 reg. | 14<br>9 reg. | 15 | 16<br>9 reg. | 17<br>9.5 reg. | 18<br>3.5 reg.<br>6 o.t. | 19<br>9 o.t. |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |  |  |  |

The designation "reg." refers to regular hours, the designation "o.t." refers to overtime hours.